Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/19/2022 12:06 AM CDT

- 797 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

State of Nebraska on behalf of Nathaniel R.,
a minor child, appellee, v. Shane F., third-party
plaintiff, appellant, and Amanda R.,
third-party defendant, appellee.

___ N.W.2d ___

Filed April 5, 2022.    No. A-21-368.

1. **Modification of Decree: Child Support: Appeal and Error.**
   Modification of child support is entrusted to the discretion of the trial
   court. An appellate court reviews proceedings for modification of child
   support de novo on the record and will affirm the judgment of the trial
   court absent an abuse of discretion.

2. **Judgments: Words and Phrases.** A judicial abuse of discretion exists
   if the reasons or rulings of a trial judge are clearly untenable, unfairly
   depriving a litigant of a substantial right and denying just results in mat-
   ters submitted for disposition.

3. **Appeal and Error: Words and Phrases.** Plain error exists where there
   is an error, plainly evident from the record, which prejudicially affects
   a substantial right of a litigant and is of such a nature that to leave it
   uncorrected would cause a miscarriage of justice or result in damage to
   the integrity, reputation, and fairness of the judicial process.

4. **Modification of Decree: Child Custody: Proof.** The party seeking
   modification of a dissolution decree has the burden to produce sufficient
   proof that a material change of circumstances has occurred that warrants
   a modification.

5. **Child Support: Rules of the Supreme Court.** In general, child sup-
   port payments should be set according to the Nebraska Child Support
   Guidelines.

6. **Child Support: Armed Forces.** Department of Veterans Affairs dis-
   ability benefits received each month should be included as nontaxable
   income for purposes of the child support calculation.

- 798 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed as modified.

Avis R. Andrews for appellant.

Richard Register, of Register Law Office, for appellee Shane F.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Shane F. appeals, and Amanda R. attempts to cross-appeal, from the order of the Dodge County District Court modifying Shane's child support obligation for the parties' minor child, Nathaniel R. We affirm as modified.

Amanda also challenges the district court's "Order Dismissing Show Cause Order," in which the court found Shane was disabled and not in willful and contumacious contempt of court for failure to pay child support. Because Amanda did not timely appeal from that order, we lack jurisdiction over the contempt matter.

## II. BACKGROUND

### 1. ORIGINAL PATERNITY AND
### SUPPORT ACTION IN 2010

In 2010, the State, on behalf of Nathaniel, filed a complaint against Shane in the Dodge County District Court to establish paternity and support. At the time, Nathaniel, born in 2006, lived in Nebraska with his mother, Amanda, and Shane lived in Texas. Amanda was not named as a party in the proceedings. In its order for support, the district court found that Shane was Nathaniel's father and ordered Shane to pay $503 per month in child support and $83 per month in medical support; the child and medical support payments were to be paid to the Nebraska Child Support Payment Center, and Amanda was to be the payee of the support payments, subject to the assignment provision set forth by Nebraska statute.

- 799 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

### 2. Modification and Contempt Actions

#### (a) Initial Pleadings and Orders

On July 10, 2019, a "Stipulated Order to Add Third Party Defendant" was entered, and the district court sustained Amanda's motion to be added as a third-party defendant.

On July 16, 2019, Shane filed an application for modification. He alleged that since the 2010 order for support was entered, there had been material and substantial changes in circumstances warranting the modification of that order in that he had been determined to be permanently and totally disabled as of March 13, 2017, by the Department of Veterans Affairs (VA); Amanda had a change in income; each party had a change in circumstances regarding health insurance available for Nathaniel; and the VA or other governmental agencies had paid benefits on behalf of Nathaniel to Amanda for which Shane had not received credit. Shane sought a reduction of his child support obligation, a reduction or termination of his cash medical support obligation, a retroactive modification of his child support obligation back to the date of his disability or other appropriate date, credit for payments made by the VA or any other governmental agency to Amanda, and costs and attorney fees.

On July 24, 2019, the State filed an answer generally denying the allegations in Shane's application for modification; the State prayed for an order dismissing Shane's application for modification. Also on July 24, Amanda filed a "Verified Application for Contempt." She alleged that Shane failed to abide by the 2010 order for support and that, more specifically, he "has failed to make a single voluntary child support payment and is currently $57,802.58 in arrears." A certified copy of a Department of Health and Human Services payment history report was attached to her application. She asked the district court to enter an order citing Shane for contempt and commanding him to appear and show cause why he should not be punished for his willful contempt. She also asked for costs and attorney fees. The next day, the district court filed an

- 800 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

order to show cause, directing Shane to appear and show cause why he should not be held in contempt.

On August 8, 2019, Amanda filed an answer to Shane's application for modification; an amended answer and cross-complaint was filed on February 19, 2020. Amanda raised the affirmative defense of unclean hands, alleging that Shane was more than $41,000 delinquent on the day he claimed to be declared disabled, made no voluntary payments on his support order since 2010, and failed to disclose his property, assets, and income for the sole purpose of not paying support. In the portion of her pleading labeled "Cross Complaint for Enforcement [sic] and Contempt," Amanda alleged that pursuant to the 2010 order, Shane was to pay $503 per month in child support and $83 per month in medical support, he failed to make a single voluntary payment of support, and was currently $61,438.68 delinquent in his support payment. She further alleged that Shane had been aware of the 2010 order from the time it was entered and had the ability to pay, but that he had refused to comply with the order. She asked the court for

> an order for enforcement of the prior unpaid support by Contempt, setting a day for [Shane] to appear and Show Cause why he should not be held in contempt and jailed for none [sic] compliance of said Order, to assess against him attorney fees, and the cost of this action.

On February 2, 2021, Shane filed a motion for leave to appear telephonically for the trial, "due to his inability to travel due to ongoing health concerns and the Covid pandemic." In its journal entry entered on February 23, the district court granted Shane's motion over Amanda's objection. The court ordered that Shane "may appear at the trial scheduled herein by telephone or by Zoom."

### (b) Trial

Trial on the modification and contempt actions was held on March 5 and 10, 2021. Shane appeared by video conference, and his counsel appeared in person. Amanda and her

- 801 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

counsel appeared in person. In addition to testimony from Shane and Amanda, numerous exhibits were also received into evidence.

Shane testified that he was 36 years old and the father of Nathaniel, age 13. Shane currently lived in California with his wife and two children, ages 6 and 4; he also has another child, age 11.

Shane testified that the last significant work he had was when he was in the "US Army." In 2006, he was placed on the "temporary disability retired list" because of recurrent generalized seizures that prevented reasonable performance of required duties. According to Shane, "[W]hen a soldier is found to be medically incapable of continuing their duties, they're placed on [the temporary disability retired list] before they are placed on the permanent disability list. This is done in case the condition improves and the soldier can be called back to duty." At the time of Shane's temporary retirement in 2006, Nathaniel was his only child. Shane's medical condition worsened, and he was never able to return to active duty. According to a letter from the VA dated May 29, 2019, Shane was rated as permanently and totally disabled effective March 13, 2017.

Shane received VA disability payments as a result of his temporary, and later permanent, disability. At the time of the district court's August 2010 order of support, the attached child support calculation worksheet included a gross monthly income of $2,774 for Shane, which was labeled as his "VA monthly [b]enefit"; Shane's VA benefit was put in the child support worksheet as taxable income, resulting in a net monthly income of $2,090.57. Since 2010, Shane has done some miscellaneous work. The most he ever received was "somewhere in the area of 2- or $300 a week" from a construction company, but that job only lasted "maybe two and a half months" (he did not specify in which year); Shane said he was physically able to do the job, but because of his seizures, his employer "let [him] go" for safety reasons.

- 802 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

Shane testified that he received periodic increases in the amount of his VA disability benefit which "are determined by the cost-of-living increases that are given to the US Military every year." According to a VA letter dated November 16, 2017, Shane's total monthly VA benefit was $3,706.56 as of April 1, with $200 of that amount apportioned for Nathaniel; the letter states that Shane was being paid as a veteran with four dependents and that his payment included an additional amount for his spouse and three minor children. According to VA letters dated March 10, 2020, and November 24, 2020, Shane's total monthly VA benefit was $4,268.70 as of July 1, 2019, with $400 of that amount apportioned for Nathaniel. The VA letter dated March 10, 2020, shows that the total "[a]llotment" was $600, and Shane testified that $400 was for Nathaniel and the other $200 was for his oldest daughter. On cross-examination, Shane agreed that his current VA benefits are approximately $4,337 per month, and the money is not taxable. According to Shane's testimony on redirect, he receives a monthly allotment from the VA of $200 per child for the two children that currently live in his home; this amounts to $400 total per month.

Shane received a letter dated June 25, 2019, from the Department of Child Support Services Loma Linda, in Loma Linda, California. The letter, regarding Nathaniel, stated, "It has come to our attention that you may be disabled and unable to work. We may be able to close your case if we receive medical proof that you are totally and permanently disabled and have no income or assets available to attach for payment of child support." The letter requested that Shane complete and return an "enclosed Medical Information Verification Report" to help the department determine if Shane's case "is eligible to be closed." Shane said that he sent the requested information. According to a letter from the Department of Child Support Services Loma Linda dated July 22, 2020, Shane's case regarding Nathaniel was "closed" on September 22, 2019. Shane

- 803 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

testified, "They closed it here in the State of California and sent it back to Nebraska."

Shane also had a child support case in Pennsylvania regarding his oldest daughter. Pursuant to a 2014 Pennsylvania court order received into evidence, Shane was ordered to pay child support for his oldest daughter starting that January. However, pursuant to a Pennsylvania court order entered in 2018, Shane's financial obligation was "set to a numerical value of zero effective OCTOBER 27, 2017 because [Shane] is unable to pay, has no known income or assets and there is no reasonable prospect that [he] will be able to pay in the foreseeable future." A subsequent Pennsylvania court order states that the support order was "terminated effective AUGUST 28, 2020 and arrears, if any, are remitted without prejudice as of SEPTEMBER 1, 2020, as the case meets the following criteria for order termination and Federal Case Closure under 45 CFR § 303.11: Intergovernmental services are no longer needed by the initiating state." When asked if he was currently ordered to pay child support on behalf of his oldest daughter, Shane responded, "No." He was then asked if he still paid support on her behalf even though it was not required by the court, and Shane replied, "Yes"; he also confirmed that it was the $200 per month he testified to earlier.

Additionally, Shane supports his wife and the two children that live in his home. Shane and his wife own 20 acres of desert property in California, and they live in a 40-foot shipping container that has been renovated to accommodate four people. The property was purchased "[a]pproximately" 6 years ago for $10,000. Shane said that "[h]alf of [the purchase price] came from my disability, the other came from my wife working online." Shane receives an exemption against taxes on the property due to "[his] status as a hundred-percent disabled veteran." According to a March 2020 letter from the assessor's office in California, "[t]his exemption applies only to the general tax levy and does not apply to any existing special

- 804 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

assessments." Shane's 2020 property tax statement shows that his total tax was $226.31.

Shane and his wife also purchased a "small number of pigs" approximately 3 years ago, and they started selling pigs "beginning this year." When asked if the pigs were an income-producing project, Shane replied, "Not yet." Shane explained how they got into the pig business.

> After we finish [sic] paying off this property, I was talk-ing with a neighbor about possible ideas or ways to invest to use the property. He told me about a special breed of pig known as the Mangalitsa. So, over the next year or two, the wife and I looked into it, did our research, found the best genetic supplier that we could, and found an investor in her brother, and we saved our pennies, and we purchased seven breeding pigs. We have since bred them twice, producing a total of 45 wee pigs. Six died of natu-ral causes and we have harvested 10.

Shane said his brother-in-law was not involved in the business, but was just an investor, and "he's actually being paid off or bought out by my wife" from monies she receives from student financial aid. On cross-examination, Shane said that his wife owns the pigs; his brother-in-law purchased the pigs, and his wife is paying her brother back from her financial aid. Shane was then questioned further about his contribution to the pig business. According to his further testimony, the pig operation was started by a "[c]ombination of monies from my wife's brother . . . and some sums from my disability"; Shane said he took his monthly check from the VA and put it toward feed-ing the animals to keep them alive to make it to the market. The first year, the pigs were small and did not eat as much, so Shane's contribution was not as high. But over the next 2 years, Shane contributed approximately $4,500 from his VA money every 3 months, or approximately $18,000 each year, to feed the pigs. He explained that the "hog" operation was created and established "for [my wife] and the kids in case I am no longer around." Shane said, "My name is on it but that's

- 805 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

just because California State law requires that a couple have all people on a family-owned business," but "it is her business for her and the kids."

Shane was asked if either he or his wife had made any money from the animals. He replied, "Not anything in the profit margin, no." He stated that they had only sold pigs for the last year and that he believed the total gross income was $15,000. Shane and his wife currently had approximately "20 meat head" that were ready for harvest, but he could not sell them because they did not have storage facilities to store the processed meat. When asked if they could sell the animals on the market, Shane replied, "No, that's not how this product works." He explained, "This is a parts market . . . . I have to process the animals, render them down to parts, take the parts to the market, and have them sold at the market by parts alone. I cannot sell these animals wholesale and make any kind of money." When asked how much he could sell the animals for today without having them slaughtered, Shane said "for a loss"; he could "possibly" sell them for between $500 and $2,400 each, but "[t]hat's completely and totally speculative." He acknowledged that he had a minimum of $10,000 in animals right now that he was paying to feed out of his VA benefits.

Until 2020, Shane did not file income tax returns. When asked if it was because of his disability, Shane replied, "Yes, ma'am; no income." But in 2020, Shane and his wife did file a tax return. Their 2020 federal tax return included a "Schedule F," "Profit or Loss From Farming." The Schedule F has only Shane's wife named as the proprietor of the "hog and pig" farm. The Schedule F states that the gross income from the hog and pig farm was $15,702, but after $19,548 in expenses, there was a net farm loss of $3,846. Shane's counsel questioned him further about the farming operation.

> Q [by counsel] Do you have an anticipation of when, if ever, your farm will be financially profitable?
>
> A [by Shane] Depending on the actions of the Court, that could be a year or it could be never.

- 806 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

Q And what do you mean?

A It means that the restrictions that have been put in place as a result of this initial order have made it so that we can't get investment revenues that would be essential for the farm to be able to expand. As such, the farm is stuck in a — a self-consuming cycle. Money that we receive from sale is immediately consumed by standing pigs in the field.

If we could afford to put in a commercial freezer, for instance, which would cost approximately $10,000, plus installation, we could have all the pigs in the field slaughtered, and, then, we wouldn't have continual draw off of those profits. But because we can't get loans, we can't make those advancements, and we will never be able to make those advancements.

Q You mentioned that your brother-in-law had made a contribution to the farm, is that correct?

A Yes, ma'am.

Q Is that a debt against the farm?

A Yes, ma'am.

Q Do you anticipate that — well, your arrangement is such that you would need to repay that?

A My wife is currently in the process of working to repay that.

Q And how much is that debt?

A I believe it was $8,500.

Q And when was that loan made?

A Approximately two and a half years ago.

Shane and his wife's 2020 federal tax return states that they had an adjusted gross income of negative $32,249 (this included the net farm loss of $3,846 and an "NOL" of $28,415).

In addition to helping with the pig farm, Shane was currently going to school for photography and was in his "senior year." He received student financial aid, "in the form of student loans and Pell grant money." He acknowledged that he

- 807 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

received more money than he had to pay for tuition and books; he "couldn't give . . . an accurate number" on how much more, but it was more than $5,000, and less than $10,000 "over the last three years." Additionally, Shane testified that the VA vocational rehabilitation program paid for the entirety of his education, including tuition, supplies, and equipment. Shane has not obtained any income from photography, as he was still a student.

Pursuant to the 2010 order of support, Shane was obligated to pay $503 per month in child support and $83 per month in cash medical support. Shane was asked if he had voluntarily paid any child support or cash medical support, other than what had been taken from the VA, since the 2010 order of support was entered. He responded, "I didn't have the financial ability to do so." Payment history reports from the Department of Health and Human Services show that from the time of the support order on August 16, 2010, until the date of the report on May 8, 2019, only $1,068.20 in child support had been collected for Nathaniel: $1,066.58 was collected on January 11, 2012, and $1.62 was collected on October 22, 2012; the payment sources for both collections were labeled "INVOL." (According to Amanda, these amounts were collected through garnishments.) Shane's outstanding child support obligation as of May 8, 2019, was $56,576.68 ($503 delinquent + $51,243.80 in arrears + $4,829.88 in interest); his outstanding medical support obligation was $8,715 ($83 delinquent + $8,632 in arrears).

Shane acknowledged that from 2010 to 2016, Nathaniel did not receive any direct payments from Shane's VA disability. It was not until 2017, when "[Amanda] took Court documentation to the VA, as is her prerogative" that $200 per month started coming out of Shane's VA disability check for Nathaniel. Nathaniel then received $200 per month from April 1, 2017, to June 30, 2019, and $400 per month beginning July 1, 2019. Shane testified that he "cannot afford to pay what [he's] paying currently." When asked how much money was currently

- 808 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

in his bank account, Shane responded, "Based on the fact that I just got my student financial aid, my VA disability, and back payments, I have approximately [$]9,000 or $10,000," but "$4500 of that is pre-slotted for feed in the next 10 days," and the "[m]ajority of it will go towards groceries and household expenses"; "the remaining amount will probably be in the ball-park of [$]100 to $200 before I get paid again."

Shane would like the child support order "to be adjusted to an appropriate sum" and he would like the arrears "to be adjusted appropriately." When asked if he was suggesting to the district court that his child support should be set in the minimum amount of $50 per month, Shane responded, "If that is the standard law." He also wanted to be given credit for the payments that had been made through his VA disability and to make that retroactive as may be permitted.

Amanda testified that she was currently employed full time and currently earns $19.10 per hour; she also paid "10 percent" into a retirement account. At the time of the district court's August 2010 order of support, the child support calculation worksheet included a monthly gross income of $1,256.67 for Amanda, which was labeled as "min wage $7.25/hr." In 2017, Amanda applied to the VA to get support money for Nathaniel after her research revealed that Nathaniel was eligible to receive benefits. After conferring with officials at the VA, she discovered that an allotment for Nathaniel had already begun. She then applied to have the allotment redirected to her and Nathaniel. Amanda received $200 per month until July 2019, at which point she asked the VA "to up the sum that Nathaniel would get since [Shane] was so far behind in child support and was not voluntarily paying child support." Since July 2019, Amanda has received $400 per month for Nathaniel from the VA. Amanda asked the district court to apply the payments she received from the VA to Shane's arrears. She would prefer to stop the cash medical support and have Nathaniel covered through Shane's health insurance, if available.

- 809 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

### (c) District Court's Oral Pronouncement

At the conclusion of the evidence, the district court orally announced its decision. The court specifically found that

> the material change in circumstance that allows for the modification relates to the erroneous information contained in the original order as relates to the father's income being taxable. In addition, his non-taxable income from his VA benefits has increased significantly; the mother's income as it relates to her ability to earn has increased as well. All of those are material changes in circumstances allowing for the Court's order which modifies that earlier order.

The court directed Shane's counsel to prepare the modification order and "to attach a calculation that I have provided based on the evidence received." The court stated that the amount of support would be $533 per month, beginning April 1, 2021; however, Shane was entitled to a credit for the $400 VA benefit paid on behalf of Nathaniel. Shane was to get credit on any arrearage as to child support for amounts previously paid from the date of the entry of the original order up until March 10, 2021, that were paid on behalf of Nathaniel through VA benefits. Amanda was to receive the tax credit for Nathaniel each year, if eligible. Shane was to provide health insurance for Nathaniel through "TRICARE." The court said it would not order any further cash medical support. The court ordered Shane to pay $50 per month toward his arrearage, beginning May 1; this was to be in addition to his regular child support obligation. The court found that Shane was not in willful and contumacious contempt of its previous order. Each party was to pay his or her own costs and attorney fees.

### (d) Written Order in Contempt Action

On March 23, 2021, the district court entered its written order dismissing the show cause order. The court found that Amanda failed to meet her burden of proof and that Shane was disabled and was not in willful and contumacious contempt

- 810 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

of court. The court ordered each party to pay for his or her own costs and attorney fees.

Amanda did not file a notice of appeal regarding the March 23, 2021, order.

(e) Written Order in Modification Action

On April 22, 2021, the district court entered its written order of modification, finding there had been a material change in circumstances warranting the modification. Shane was now ordered to pay child support on behalf of Nathaniel in the amount of $533 per month commencing on April 1. Also commencing April 1, Shane was to receive credit against the child support ordered in the amount of the apportionment payment sent to Amanda by the VA on behalf of Nathaniel, currently in the amount of $400 per month, with any adjustments to said amount that may be made from time to time by the VA. Shane was also to receive credit against his child support arrearage for payments made to Amanda by the VA in the amount of $200 per month commencing April 1, 2017, through May 31, 2019, and in the amount of $400 per month commencing June 1, 2019, through March 31, 2021, including an adjustment for all interest attributable to said amounts paid. Cash medical support previously ordered that was designated as going to Amanda in the amount of $5,683 was to be included in the arrearage owed to Amanda by Shane, and all cash medical support that was not designated to be paid to Amanda was determined to be forgiven and not owed by Shane; "[o]ngoing cash medical support is not ordered at this time." In addition to the child support amount ordered, Shane was ordered to pay an additional $50 per month to be applied to the arrearage of his child support obligation commencing May 1, 2021. Shane was ordered to provide health insurance for Nathaniel through "Tricare," and Amanda was awarded the right to claim Nathaniel for income tax purposes.

On May 5, 2021, Shane filed a notice of intent to appeal the April 22 order of modification. Shane also filed a motion

- 811 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

for leave to proceed in forma pauperis (IFP), alleging that he did "not have sufficient money or property to pay the costs of this action." Additionally, he filed an affidavit of poverty, stating that he was unable to pay the costs of appeal, and his financial affidavit. On May 10, the district court granted Shane's motion for leave to proceed IFP on appeal.

### (f) Nunc Pro Tunc

On July 23, 2021, Shane filed a motion for an order nunc pro tunc to "correct the Order of Modification filed herein by attaching a copy of the child support calculation adopted by the Court." In an order filed on July 26, the court sustained Shane's motion and ordered that the child support calculation adopted by the court be attached to and made a part of the order of modification entered on April 22.

Although the attachment to the April 22, 2021, modification order appears to have occurred after Shane filed his notice of appeal, the child support worksheet was required to be attached, and in any event, it would have been requested by this court on appeal. See Neb. Ct. R. App. P. § 4-203 (rev. 2020) ("[a]ll orders for child support, including modifications, must include a basic income and support calculation worksheet 1, and if used, worksheet 2 or 3"). See, also, *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020) (remanded matter to the district court with directions to prepare and attach appropriate child support worksheet to order of modification).

### III. ASSIGNMENTS OF ERROR

Shane assigns, summarized and restated, that the district court erred in (1) calculating his child support obligation because it (a) included his VA disability benefit as income, (b) failed to provide an appropriate deduction for his other children, (c) failed to appropriately enter the exemptions awarded to each party, and (d) failed to take into consideration the farm losses he sustained; (2) failing to set his child support at a minimum amount; and (3) failing to grant him a deviation in child support.

- 812 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

Amanda attempts to cross-appeal the district court's orders and assigns, reordered, that the district court erred in (1) allowing Shane to not appear in person, (2) not allowing testimony about Shane's expenses, (3) allowing deductions for after-born children, (4) allowing Shane to pay on his arrearages in such a small amount, (5) not allowing attorney fees, (6) granting Shane IFP status on appeal, and (7) failing to find Shane in contempt. However, Amanda's brief does not comply with Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2022) and *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179 (2019). Additionally, her claim regarding the court's failure to find Shane in contempt—the only claim that is argued after the section of her brief labeled "Cross Appeal"—was not timely appealed as will be explained later. The remainder of her claims, argued before the section of her brief labeled "Cross Appeal," will be considered for plain error only. See *Tyler F. v. Sara P.*, 306 Neb. 397, 945 N.W.2d 502 (2020) (appellate court may, at its option, notice plain error).

## IV. STANDARD OF REVIEW

[1] Modification of child support is entrusted to the discretion of the trial court. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. *Id.*

[2] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021).

[3] Plain error exists where there is an error, plainly evident from the record, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Tyler F. v. Sara P., supra*.

- 813 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

## V. ANALYSIS

### 1. Contempt

In her cross-appeal, Amanda claims that the district court erred when it failed to find Shane in contempt for failure to pay child support. However, Amanda did not timely appeal from the district court's March 23, 2021, order regarding her contempt action; the court's April 22 order did not address the contempt action. Accordingly, we lack jurisdiction over the contempt matter. See *Belitz v. Belitz*, 21 Neb. App. 716, 842 N.W.2d 613 (2014) (application to modify custody and application for order to show cause regarding contempt were two separate pleadings and presented separate issues even though heard at same time; one sought new relief, and other sought to enforce relief previously granted; each needed to be timely appealed). See, also, Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2020) (notice of appeal shall be filed within 30 days of entry of judgment, decree, or final order).

### 2. Calculation of Child Support

[4,5] The party seeking the modification of child support has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification. *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021). Neither party disputes that there has been a material change in circumstances warranting the modification of child support. The evidence is clear that both parties have had a significant change in income since 2010 and that the 2010 support order erroneously treated Shane's VA disability income as taxable. However, both parties claim error regarding the district court's calculation of Shane's child support obligation. In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019).

### (a) VA Disability Benefit as Income

In the district court's child support worksheet, Shane's monthly tax-exempt income was $4,337. This amount is

- 814 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

supported by Shane's testimony that his current VA benefits are approximately $4,337 per month and that the money is not taxable. However, Shane argues, without any supporting authority, that the court erred in including his VA disability benefit as income for purposes of child support. Shane claims his VA disability benefit "should be considered to be in the nature of a means-tested public assistance benefits [sic] as it is provided to [Shane] as well as his children in lieu of earned income." Brief for appellant at 17.

[6] Neb. Ct. R. § 4-204(A) (rev. 2020) states in relevant part that the total monthly income is the income of both parties derived from all sources, except all means-tested public assistance benefits. As pointed out by Amanda, even Shane testified that he was entitled to the permanent VA disability payments, even if he returned to paid employment, thus clearly making such disability payments "not a 'means' tested public assistance benefit." Brief for appellee at 33. Further, the Nebraska Supreme Court has found that VA disability benefits received each month should be included as nontaxable income for purposes of the child support calculation. See *Dooling v. Dooling*, 303 Neb. at 504, 930 N.W.2d at 493 ("[w]e agree with the parties that the $763.36 that [the father] receives in [VA] disability benefits each month should have been included as nontaxable income for purposes of the child support calculation").

The fact that a court in a different state found Shane was no longer required to pay child support for a different child is of no consequence in determining whether Shane's VA disability benefits can be considered income for child support purposes in Nebraska. See, also, 45 C.F.R. § 303.11 (2020) (discretionary versus mandatory case closure by "IV-D agency"; regulation cited in Pennsylvania court order terminating Shane's child support for oldest daughter). Likewise, the fact that the Department of Child Support Services Loma Linda "closed" its case regarding Nathaniel on September 22, 2019, has no bearing on whether Shane's VA disability benefits can be considered income for child support purposes in Nebraska.

- 815 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

Accordingly, we find that Shane's tax-exempt VA disability benefits of $4,337 per month were properly included as income for purposes of child support. Neither party disputes the district court's use of $3,310.66 for Amanda's gross monthly income in the child support worksheet.

### (b) Deduction for Other Children

Shane argues that the trial court failed to provide an appropriate deduction for his other three children. "Rather than using the guidelines to determine the amount of [his] income that should be attributable to his three other children, the trial court used the allocations made by the [VA]." Brief for appellant at 18. Shane argues that "[s]uch a method results in $533 being awarded for Nathaniel's support while only $200 each is set off for the other three children," and "[s]uch a disparity is grossly inequitable." *Id.* That is the full extent of Shane's argument on this issue. He appears to be arguing that awarding $533 in child support for one child, Nathaniel, and only crediting $200 each for his other three children is inequitable. However, we cannot say it was an abuse of discretion for the district court to use the VA allocations as determinative of Shane's deduction for "regular support" for his other children when no other evidence was received to support deducting any other amount. No child support guideline calculations were provided to show what Shane would potentially pay in child support for his other children based upon his income and his current wife's income. Without such evidence, it was certainly reasonable for the court to provide a deduction for the other children by using the VA amounts allocated for those children.

However, in reviewing the district court's child support worksheet, we see that the court allocated a $200 deduction for "Previously Ordered Support" and an $800 deduction for "Regular Support for Other Children." We conclude it was an abuse of discretion to deduct a total of $1,000 for support of Shane's other children, rather than $600, as explained below.

- 816 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

As noted, the district court gave Shane a $200 monthly deduction for "Previously Ordered Support." See Neb. Ct. R. § 4-205(D) (rev. 2016). However, Shane's child support obligation for his oldest daughter was terminated in August 2020. Therefore, the $200 monthly deduction for previously ordered support was an abuse of discretion.

For "Regular Support for Other Children," the district court deducted $800. While Shane should not have been given a $200 monthly deduction for previously ordered support, he may be eligible for a $200 deduction for the regular support he pays for his oldest daughter. Section 4-205(E) provides that, subject to Neb. Ct. R. § 4-220, credit may be given for biological or adopted children for whom the obligor provides regular support. Section 4-220 states that an obligor shall not be allowed a reduction in an existing support order solely because of the birth, adoption, or acknowledgment of subsequent children of the obligor; however, a duty to provide regular support for subsequent children may be raised as a defense to an action for an upward modification of such existing support order.

When Shane was asked whether he still paid support on behalf of his oldest daughter even though it was not required by the court, Shane replied, "Yes." He confirmed that he still paid the $200 per month allotted to her from the VA.

Shane further testified that he receives a $200 monthly allotment from the VA for each of the two children that currently live in his home, a total of $400 per month. He testified that he used VA benefits to pay the family's household expenses. Accordingly, pursuant to § 4-205(E), Shane may be eligible for a deduction of $400 per month for the two children that currently reside in his home.

Based on the evidence at trial, Shane receives a total of $600 per month in allotments from the VA for the benefit of his oldest daughter and the two children who currently reside with him. No other evidence was given regarding support he pays for those three children. Accordingly, the district court abused its discretion in giving Shane monthly deductions

- 817 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

for previously ordered support and regular support for other children totaling $1,000, as there was no evidence justifying that amount. At most, based upon the limited record provided on this issue, Shane was eligible for a $600 deduction from his VA disability income as a credit for regular support for his other children. Our own child support calculation worksheet, which is attached to this opinion as appendix A, will include a $600 deduction pursuant to § 4-205(E).

### (c) Exemptions

Shane contends the district court erred in failing to properly enter the exemptions awarded to each party in calculating child support; he points out that although the court awarded the income tax exemption to Amanda, the court split the exemption between the parties. We agree, and we will give the exemption for Nathaniel to Amanda in our own child support calculation worksheet, which is attached to the opinion as appendix A.

### (d) Farm Losses

Shane argues that the district court failed to take into consideration the farm losses he sustained. He claims that he and his wife started a pig operation in good faith, anticipating that they would be able to make a living from the operation, but that due to various factors, the operation was not profitable and instead served to deplete his income. He additionally claims that the pig operation "was failing and would continue to fail due to his inability to obtain additional capital in part because of his child support obligation and arrearage." Brief for appellant at 19. However, Nathaniel's child support obligation should not be reduced as a result of Shane deciding to deplete his income to support a business venture that has failed to yield a profit.

Shane has been ordered to pay child support for Nathaniel since 2010. However, other than $1,066.58 that was garnished from him in 2012, Shane has not paid any amount of child support for Nathaniel from 2010 until 2017, when Amanda

- 818 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

had money redirected to Nathaniel from Shane's VA disability benefits. The record does not reveal whether or for how long Shane may have been receiving benefits on behalf of Nathaniel before those benefits were redirected to Amanda for Nathaniel's benefit. Rather than using his VA income to pay court-ordered support for Nathaniel, Shane instead chose to invest in a pig operation in approximately 2017 that has failed to make a profit and which he admits will continue to fail to make a profit. Despite the failing business venture, Shane continues to expend $4,500 of his VA income every 3 months to feed the pigs. Incredibly, he blames his child support obligation and arrearage as the reason the pig operation will not make a profit, and he asks that his child support obligation be eliminated or reduced. Under the circumstances of this case, the district court did not abuse its discretion when it did not take into account the farm losses in its child support order. Nor did the district court abuse its discretion when it did not set Shane's child support at a minimum amount or grant him a deviation.

### (e) Child Tax Credit

Although not assigned as error by either party, we note a matter of plain error. In its oral pronouncement, the district court stated that Amanda was to receive the tax credit for Nathaniel each year, if eligible; the tax credit was not mentioned in the written order of modification. Nevertheless, the district court's child support calculation included a child tax credit of $83.33 for each parent; this was plain error as only Amanda was to receive any tax credit. The $83.33 credit for Shane will be eliminated in our own child support calculation worksheeet, which is attached to this opinion as appendix A.

### (f) Child Support Calculation

The district court's child support calculation included errors, specifically the deductions, credits, and exemptions, as noted previously. We have completed our own child support

- 819 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

calculation worksheet, which is attached to this opinion as appendix A. The district court used the tax filing status of "Head of Household" for both parties in its child support calculation worksheet. We will use the same in our calculation, although we note that since Shane's VA income is tax exempt, his filing status on the worksheet makes no difference in the outcome.

Under our de novo calculation, Shane's monthly child support obligation should be $562 per month, not $533 per month, and we modify the district court's order accordingly. But, as noted in the district court's order, Shane shall receive a credit against the child support ordered in the amount of the apportionment payment sent by the VA on behalf of Nathaniel, currently in the amount of $400 per month.

We find no plain error in the district court's decision to order Shane to pay an additional $50 per month to be applied to his arrearage.

### (g) Miscellaneous Claims

We find no plain error in the district court's decision to allow Shane to appear via videoconference or telephone, order each party to pay his or her own attorney fees, or allow Shane to proceed IFP on appeal.

### VI. CONCLUSION

For the reasons stated above, we lack jurisdiction over the contempt matter as there was no timely appeal from that order.

As to the order of modification, because of the errors noted above, we have completed our own child support calculation worksheet, which is attached to this opinion as appendix A. We modify and order Shane's regular child support obligation to be $562 per month, rather than $533 per month, with credit against that child support in the amount of $400 per month for payments sent by the VA on behalf of Nathaniel, as addressed above.

Affirmed as modified.

- 820 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF NATHANIEL R. v. SHANE F.
Cite as 30 Neb. App. 797

# APPENDIX A

Case Name: <u>State o.b.o. Nathaniel R.</u>
Worksheet 1 - Basic Income and Support Calculation

Mother: Head of Household / 2 Exemptions / Regular Employment
Father: Head of Household / 1 Exemptions / Regular Employment

| Line | Description | Mother | Father |
|---|---|---|---|
| 1 | Gross Earned Taxable Income | $3,310.66 | $0.00 |
| 1 | Gross Unearned Taxable Income | $0.00 | $0.00 |
| 1 | Tax-Exempt Income | $0.00 | $4,337.00 |
| 2.a | Taxes - Federal | $185.61 | $0.00 |
| 2.a | Taxes - Nebraska | $57.88 | $0.00 |
| 2.b | FICA - Social Security / Railroad Retirement* | $205.26 | $0.00 |
| 2.b | FICA - Medicare | $48.00 | $0.00 |
| 2.c | Retirement | $132.43 | $0.00 |
| 2.d | Previously Ordered Support | $0.00 | $0.00 |
| 2.e | Regular Support for Other Children | $0.00 | $600.00 |
| 2.f | Health Insurance Premium for Parent | $0.00 | $0.00 |
| | Other Deductions | $0.00 | $0.00 |
| | Child Tax Credit | ($83.33) | ($0.00) |
| 2.g | Total Deductions | $545.85 | $600.00 |
| 3 | Net Monthly Income | $2,764.81 | $3,737.00 |
| 4 | Combined Net Monthly Income | $6,501.81 | |
| 5 | Combined Net Annual Income | $78,021.76 | |
| 6 | Each Parent's Percent | 42.52% | 57.48% |
| 7 | Monthly Support from Table (1 Child) | $978.00 | |
| 8 | Health Insurance Premium for Children | $0.00 | $0.00 |
| 9 | Total Obligation | $978.00 | |
| 10 | Each Parent's Monthly Share | $415.85 | $562.15 |
| 11 | Credit For Health Insurance Premium Paid | ($0.00) | ($0.00) |
| 12 | Each Parents' Final Share (1 Child, rounded) | $416.00 | $562.00 |

Worksheet 4 - Number of Children Calculation (final shares are rounded to the nearest whole dollar)

| No. Children | Table Amt. | Table + Health Ins. | Mother's Share of Total | Father's Share of Total | Mother's Final Share | Father's Final Share |
|---|---|---|---|---|---|---|
| 1 | $978.00 | $978.00 | $415.85 | $562.15 | $416.00 | $562.00 |